United States District Court
Southern District of Texas
**ENTERED**
March 06, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Kristy Kay Terry, § | |
| § | |
| *Plaintiff,* § | |
| § | Case No. 4:22-cv-00096 |
| v. § | |
| § | |
| Kilolo Kijakazi, Commissioner of § | |
| the Social Security Administration, § | |
| § | |
| *Defendant.* § | |

# MEMORANDUM AND RECOMMENDATION

In this appeal from the denial of disability benefits, the parties have filed cross-motions for summary judgment. Dkt. 11; Dkt. 13. After carefully considering the parties' briefs, Dkts. 11-13, the record, Dkt. 9, and the applicable law, it is recommended that Defendant Kilolo Kijakazi's ("the Commissioner's") motion be granted, Dkt. 13, and that Plaintiff Kristy Terry's motion, Dkt. 11, be denied.

## Background

For over thirty years, Terry worked various jobs, including at a gas station, at a store, and at several restaurants. *See* R.192-94, 258.[1] At her last job, Terry worked part-time at a 7-Eleven. *See* R.35-36.

---

[1] The administrative record is found in Dkt. 9 and is cited herein by the Bates-numbers at the bottom of each page.

From 2018-2020, Terry sporadically obtained medical treatment for her physical and mental ailments. *See, e.g.*, R.544. She was treated for pain stemming from degenerative changes to her hip and for osteoarthrosis in her knees and hips. R.388-90, 421. Physical therapy improved her mobility, and steroid injections in her left knee helped alleviate the pain. R.443 (Dec. 17, 2020 steroid injection); R.448 (May 29, 2020 referral for steroid injunction, noting that Terry stated "she is still ambulatory and able to walk"); R.449 (reporting "50 percent improvement within 2 days" of last steroid injection), R.470-71 (Sept. 15, 2020 notes, stating that daily exercises are "helping" and the she "is having "less pain").

For her mental health, Terry had sporadic treatment for depression and substance abuse. *See, e.g.*, R.312 (Nov. 27, 2018 notes with Terry's history); R.331 (Oct. 4, 2018 psychiatric follow-up); R.336 (Aug. 2, 2018 psychiatric follow-up); R.339-40 (June 14, 2018 psychiatric evaluation).

Terry filed for social security benefits in May of 2020, alleging a disability onset date of October 1, 2019. R.13, 184, 210. The Commissioner rejected her claim both initially and again on reconsideration. R.103, 118. Terry then obtained a hearing with an Administrative Law Judge ("ALJ"), R.141, which occurred on March 5, 2021. *See* R.29-54 (hearing transcript).

In June of 2021, the ALJ issued a decision concluding that Terry did not qualify as disabled under the Social Security Act. R.13-23. The ALJ employed

the standard five-step method. First, the ALJ determined that Terry met the insured status requirements and that Terry had not engaged in substantial gainful activity since October 1, 2019. R.15-16. Second, the ALJ established that Terry suffered from several severe impairments, including osteoarthritis, obesity, polysubstance abuse disorder, anxiety, and depression. R.16. Third, the ALJ determined that Terry's impairments did not meet or equal the severity of any listed in 20 CFR Part. 404 Subpart P, Appendix 1. *See* R.16; 20 C.F.R. §§ 404.920(d), 404.1520(d).

The ALJ next turned to Terry's Residual Functional Capacity ("RFC"). The ALJ determined that Terry's physical limitations permitted her to perform light work, with the additional restrictions of occasionally climbing ramps, stairs, ladders, ropes, and scaffolds, but frequently balancing, stooping, kneeling, and crawling, and occasionally crouching. R.18. For Terry's mental limitations, the ALJ determined that she could understand, remember, and carry out detailed, but not complex, instructions; use judgment to perform detailed, but not complex instructions; and adapt to frequent, but not constant, changes in a routine work setting. *Id.* Applying this RFC at step four, the ALJ found that Terry could perform her past work, which meant that Terry was not disabled. R.22-23.

The Appeals Council denied Terry's request for review. R.1. Terry then filed this appeal pursuant to 42 C.F.R. § 405(g). *See* Dkt. 1.

## **Legal Standard**

This Court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is enough that a reasonable mind would support the conclusion." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). It is "more than a scintilla, but it need not be a preponderance." *Id.* (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)) (internal quotation marks omitted).

The Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must review the record as a whole, including whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). "Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

## II. Substantial evidence supports the ALJ's determination that Terry is not disabled.

Terry challenges the ALJ's formulation of her RFC, which she claims is not supported by substantial evidence. *See* Dkt. 12 at 2. An applicant's RFC is defined as "the most [an applicant] can still do despite [her] limitations." 20 C.F.R. § 404.1545. "The ALJ is responsible for determining an applicant's residual functional capacity." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546); *see also* 20 C.F.R. § 404.1527(d)(2) (the Commissioner of the Social Security Administration is reserved the final responsibility for opinions, including the RFC). In determining the RFC, the ALJ examines all medical evidence in the record. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); 20 C.F.R. § 404.1545 (RFC is based on "all the relevant evidence in [an applicant's] case record").

Terry attacks the physical limitations in the RFC indicating that she can "occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance, stoop, kneel, and crawl; [and] occasionally crouch ...." *See* Dkt. 12 at 6 (citing R.18). In particular, Terry argues that the ALJ discounted Terry's description of her limitations without properly analyzing how those allegations comport with the record as a whole. Dkt. 12 at 5-7 (citing 20 C.F.R. § 404.1529(c)), 8-13. Terry cites her May 2020 function report, which represents that Terry suffers "a lot" of pain and can "barely walk and cannot stand" for

6

long stretches. Dkt. 12 at 47 (citing R.249-50 and Terry's hearing testimony); *see also* R.251-52, 254-55 (other portions of function report, describing limitations). Terry also testified about her limitations at the hearing, stating that she could no longer work her part time job because of the pain, R.36,44, that she has been using a cane and a walker, R.45, that she can only stand and walk for eight to ten minutes before needing to sit, R.46, and that she can lift and carry only about five pounds for brief periods and distances, R.47.

According to Terry, the ALJ also failed to acknowledge certain objective medical evidence that support her self-described limitations. *See* Dkt. 12 at 8-9. Terry asserts that the ALJ did not acknowledge the degree to which her right hip joint had degenerated. *Compare* R.19 (noting hip x-rays and degenerative changes that had progressed), *with* R.399 (describing these changes as moderate to severe), *and* R.558, 560 (noting severe osteoarthrosis in right hip with complete loss of joint space). Terry also attacks the ALJ's analysis of her ability to ambulate, emphasizing records that note her use of a cane or walker. *Compare* R.17 (finding "the claimant is able to ambulate effectively"), *with* R.475-76 (Aug. 5, 2020 note observing the use of "single point cane" and recommending "[g]ait training" with a rolling walker); R.495 (Apr. 15, 2021 note indicating that Terry used a walker); R.544 (Dec. 8, 2020 record noting use of walker).

7

Regulations instruct how ALJs should evaluate limiting conditions—including pain—in a person's RFC. "Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [a claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account ...." 20 C.F.R. § 4040.1529(c)(3). Pain only constitutes a disabling condition when "it is constant, unremitting, and wholly unresponsive to therapeutic treatment." *White v. Callahan*, 127 F.3d 35 (5th Cir. 1997).

When evaluating pain, ALJs examine a non-exclusive list of seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; (6) measures other than treatment the claimant uses to relieve pain or other symptoms (e.g., lying flat on his or her back); (7) and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, *7-8 (Oct. 15, 2017); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ is not required to discuss these factors if there is no

8

record evidence addressing them. *See* SSR 16-3p, 2017 WL 5180304, *8 (Oct. 15, 2017).

In this case, the ALJ adequately addressed these factors. The ALJ assessed Terry's daily activities, the effect of treatment and other medication had on her pain, and an additional factor—her work history. *See* R.20-21. The ALJ found evidence showing that Terry's allegations were not entirely consistent with the whole medical record. *Id.*

With respect to daily activities, the ALJ found that the evidence does not show "significant difficulties in the claimant's ability to engage in activities of daily living." R.20. Although Terry certainly complained of her limitations affecting her daily activities, *see, e.g.*, R.45, the ALJ concluded that such limitations were not supported by Terry's limited medical record. The ALJ also considered the reports of the state consultative examiners, who noted that Terry "does not need reminders, is able to prepare meals, does house chores, can drive a car, goes out alone, shops in stores, handles finances, spends time with others ...." R.58. Given this evidence contradicting Terry's allegations of unremitting pain, the ALJ was not in error for finding those complaints inconsistent with the record as a whole. *See Mulet-Rivera v. Barnhart*, 437 F. Supp. 2d 616, 635 (S.D. Tex. 2006) (affirming ALJ's decision where daily activities did not support claimant's reports of severe pain).

9

Further, Terry has not had any aggressive treatment for her pain, such as surgery. R.21. She did not provide any documented medical evidence of muscle weakness, spasms, or atrophy. *Id.* Nor did Terry provide any medical evidence "such as tests, progress notes, list[s] of medication [or] other written documentation to establish that her impairments would prevent her from working." *Id.* And the ALJ was skeptical of Terry's subjective complaints because Terry told a physician that "she wants to apply for disability so that she could spend more time with her children ...." R.21 (citing R.312).

The ALJ also properly examined the effects of treatment and other medication. Per the state consultative examiners' report, months after Terry's alleged disability onset date, Terry was "[a]ble to walk on heels and toes[,]" had a "[n]ormal gait without antalgia" (*i.e.*, without a pain-induced abnormality), and tested negative for balance issues (Romberg test). R.57 (citing Feb. 2020 records, R.385). The ALJ also noted that Terry's ability to ambulate improved with physical therapy. *See* R.20 (citing notes in R.471, indicating that Terry "is having less pain and ambulating with less difficulty"). Terry's physical condition also responded to medication, as steroid injections in her knee improved her mobility by fifty percent within two days. *Id.* (citing R.449). Based on these improvements, the ALJ reasonably could conclude that Terry is not disabled. *See Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) ("If

10

an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.").

The ALJ further considered Terry's work history. *See* R.21. For example, Terry's symptoms were ongoing while she was working part time at a 7-Eleven, R.20; *see also* R.36 (Terry's hearing testimony). While Terry correctly notes that sporadic jobs do not equate to "an ability to work," Dkt. 12 at 11 (citing *Shutt v. Secretary*, 490 F.2d 43, 47-48 (5th Cir. 1974)), the ALJ was nonetheless permitted to consider Terry's work during the relevant period, *see Murray v. Astrue*, 419 F. App'x 539, 540 (5th Cir. 2011) (citing *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995)). Indeed, as the Commissioner observes, "[i]nconsistencies between [Terry's] testimony about [her] limitations and [her] daily activities" are relevant to her credibility. Dkt. 31-1 at 8 (quoting *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990) (per curiam)).

Terry's suggestion that the ALJ should have accounted for her use of an assistive walking device is without merit. An RFC must incorporate a claimant's use of an assistive device only if the device is "medically necessary."[2] *See Faulkner v. Kijakazi*, 2022 WL 3356412, *4 (S.D. Tex. Aug. 15, 2022) (collecting cases). That, in turn, requires "medical documentation establishing

---

[2] Terry also argues that the ALJ's alleged error prejudiced her because a more limiting RFC would result in a determination that she is disabled. *See* Dkt. 12 at 7-8. Because the Court finds no error, it does not reach the issue of prejudice.

11

the need for the device to aid in walking or standing and describing the circumstances for which it is needed." SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). A prescription for an assistive device is "not necessarily dispositive" because the ALJ "must still consider the particular facts of the case." *Myers v. Kijakazi*, 2022 WL 4473902, at *3 (S.D. Tex. Aug. 24, 2022) (internal quotation marks omitted), *report and recommendation adopted*, 2022 WL 4477311 (S.D. Tex. Sept. 26, 2022).

      Here, Terry's children—not any physician—gave her a cane. R.19 (citing R.45). Although a physical therapist trained Terry on using a rolling walker, R.476 (physical therapy notes), none of Terry's records indicate the circumstances under which the walker was necessary for her to stand, ambulate, or perform any other physical activities. *See, e.g., Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (collecting circuit decisions that require unambiguous medical opinion "stating the circumstances in which an assistive device is medically necessary"); *Moore v. Saul*, 2021 WL 909618, at *3 (S.D. Miss. Feb. 1, 2021) (quoting *Tripp* and *Staples v. Astrue*, 329 F. App'x 189, 192 (10th Cir. 2009), for this principle), *report and recommendation adopted*, 2021 WL 754833 (S.D. Miss. Feb. 26, 2021). Without a showing that the assistive device was medically necessary, the ALJ was not required to consider Terry's use of a cane or walker in her RFC assessment. *See, e.g., Stewart v. Colvin*, 2013 WL 1979738, at *5-6 (N.D. Tex. May 14, 2013) (no error in ALJ's refusal

to incorporate use of assisted device in RFC, when no evidence showed its medical necessity).

In sum, Terry's arguments invite the Court to reweigh the evidence. Because the Court cannot do so, it should affirm the ALJ's decision.

## Recommendation

For the foregoing reasons, it is recommended that Plaintiff Kristy Terry's motion for summary judgment (Dkt. 11) be **DENIED**, Defendant Kilolo Kijakazi's motion for summary judgment (Dkt. 13) be **GRANTED**, and the ALJ's decision be **AFFIRMED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on March 6, 2023, at Houston, Texas.

*Yvonne Y. Ho*
_____
Yvonne Y. Ho
United States Magistrate Judge